UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| KENNETH RAY SIZEMORE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 5:16-cv-104-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, ACTING | ) | **MEMORANDUM OPINION** |
| COMMISSIONER OF SOCIAL | ) | **&** |
| SECURITY, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Kenneth Ray Sizemore seeks judicial review of an administrative decision of the Commissioner of Social Security, which denied Sizemore's claim for supplemental security income and disability insurance benefits. Sizemore brings this action pursuant to 42 U.S.C. § 405(g), alleging various errors on the part of the ALJ considering the matter. The Court, having reviewed the record and for the reasons set forth herein, will DENY Sizemore's Motion for Summary Judgment and GRANT the Commissioner's.

**I**

**A**

Plaintiff Kenneth Ray Sizemore filed an application for Title II disability insurance benefits and Title XVI supplemental social security on September 9, 2013, alleging disability beginning on October 2, 2012 in both claims. [Transcript (hereinafter, "Tr.") 17.] Sizemore's claims were initially denied by an Administrative Law Judge and then denied again upon reconsideration. [*Id.*] Subsequently, the ALJ conducted a hearing with Sizemore and counsel, and the ALJ issued a final decision ultimately denying both of Sizemore's claims for benefits.

[*See* Tr. 17-27.]

To evaluate a claim of disability for both Title II disability insurance benefit claims and Title XVI supplemental security income claims, an ALJ conducts a five-step analysis. *Compare* 20 C.F.R. § 404.1520 (disability insurance benefit claim) *with* 20 C.F.R. § 416.920 (supplemental security income claims).[1] First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." C.F.R. § 404.1530(d). Before moving on to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity ("RFC"), which assess an individual's ability to perform certain physical and metal work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.

Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is "disabled." 20 C.F.R. § 404.1520(f).

---

[1] For purposes of a disability insurance benefits claim, a claimant must show that his impairments were disabling prior to the date on which his insured status expired. 20 C.F.R. § 404.131. Beyond this requirement, the regulations an ALJ must follow when analyzing Title II and Title XVI claims are essentially identical. Hereinafter, the Court provides primarily the citations to Part 404 of the relevant regulations, which pertain to disability insurance benefits. Parallel regulations for supplemental security income determinations may be found in Subpart I of Part 416.

Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving his lack of residual functional capacity. *Id.*; *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

At the outset of this case, the ALJ determined that Sizemore met the insured status requirements of the Social Security Act through December 31, 2017. [Tr. 19]; *see also* 20 C.F.R. § 404.131. Then at step one, the ALJ found Sizemore had not engaged in substantial gainful activity since the alleged disability onset date. [Tr. 20.] At step two, the ALJ found Sizemore to suffer from the following severe impairments: aortic aneurysm, back pain secondary to degenerative disc disease, lumbar spine; history of substance abuse; mood disorder; and borderline intellectual functioning. [*Id.*] At step three, the ALJ determined Sizemore's combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404 or Part 416. [Tr. 22.] Before moving on to step four, the ALJ considered the record and determined that Sizemore possessed the following residual functioning capacity:

> [T]he claimant has the residual functional capacity to perform a reduced range of light work. The claimant can lift and carry 20 pounds occasionally, 10 pounds frequently. He can stand/walk for 4 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. The claimant is unable to climb ropes, ladders and scaffolds. He can occasionally climb ramps/stairs, balance, kneel, crouch, crawl, and stoop; avoid concentrated exposure to extreme cold and extreme heat, vibration and hazards. The claimant is able to understand and remember simple instructions, make judgments that are commensurate with the functions of unskilled work; respond appropriately to supervision, coworkers and work situations and deal with changes in a routine work setting.

[Tr. 23.] After explaining Sizemore's RFC, the ALJ found at step four that, based on this RFC,

his age, education, and work experience, there are several jobs in the national economy that Sizemore can perform. [Tr. 26.] Accordingly, the ALJ found at step five that Mr. Sizemore is not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). [Tr. 27.]

Following the unfavorable decision, Sizemore timely appealed to the Appeals Council. However, the Appeals Council denied review on February 4, 2016, and Sizemore now seeks judicial review in this Court. [*See, e.g.*, R. 8-10.]

**B**

The Court's review is generally limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's

4

decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## II

Sizemore presents three arguments to this Court as grounds for relief from the ALJ's unfavorable decision. Specifically, Sizemore argues: (1) the ALJ failed to classify his peripheral artery disease ("PAD") as "severe," which would subsequently affect his residual functional capacity; (2) the ALJ failed to analyze whether Sizemore's aneurysms or his PAD met Listings 4.10 and 4.12 as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (3) more broadly, the ALJ failed to address how the combination of Sizemore's impairments affected his residual functional capacity. [*See* R. 8-1 at 2.] For the reasons set forth below, Sizemore's arguments do not warrant a reversal of the ALJ's determination.

## A

First, Sizemore takes issue with the way the ALJ evaluated his PAD and, particularly, the fact that his PAD was not identified as a severe impairment. However, whether or not the ALJ properly identified Sizemore's severe impairments at Step Two of his analysis ultimately proves immaterial in this case. Sixth Circuit case law makes clear that where an ALJ finds at least one severe impairment and then considers both the severe and non-severe impairments during the remaining steps of the analysis, the fact that some of a claimant's impairments were not deemed severe is "legally irrelevant." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008); *see also Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Fisk v. Astrue*, 253 F. App'x 580, 583-84 (6th Cir. 2007).

5

The ALJ did not list Sizemore's PAD as a severe impairment at Step Two, but he did find Sizemore suffered from several severe impairments including "aortic aneurysm; back pain secondary to degenerative disc disease, lumbar spine; history of substance abuse; mood disorder; and borderline intellectual functioning." [Tr. 20.] The ALJ then considered the severe impairments as well as Sizemore's non-severe impairments later on in his analysis. While Sizemore maintains the ALJ failed to consider his PAD diagnosis at all, the record reflects otherwise. The ALJ referred a number of times to Dr. O'Reilly's finding that Sizemore suffers from "severe peripheral vascular disease" in his summary of the medical evidence [*see* Tr. 21; Tr. 300-301], [2] and he also mentioned Dr. Brown's findings regarding Sizemore's PAD. [Tr. 22; Tr. 345.] Any failure to identify Sizemore's PAD as a severe impairment is harmless because the ALJ continued his analysis beyond step two.

**B**

Next, Sizemore takes issue with the fact that the ALJ did not evaluate whether his aneurysms or his PAD met Listing 4.10 (aneurysm of aorta or major branches) or Listing 4.12 (peripheral arterial disease). At the third step in the disability evaluation process, the ALJ considers whether a claimant's impairments meet or medically equal one of the listings in the Listing of Impairments, which describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity,

---

[2] ALJ Kayser uses the term "peripheral vascular disease" in his opinion rather than "peripheral arterial disease" or "PAD", but the Court finds that distinction immaterial for purposes of this claimant's disability evaluation. Dr. O'Reilly, a cardiologist, appears to have used the terms interchangeably: on the first page of a medical record from his office, Dr. O'Reilly indicates that Sizemore "has incredibly severe peripheral arterial disease resulting in the development of a fusiform 5 cm infrarenal abdominal aortic aneurysm . . . ." [Tr. 300 (emphasis added).] And on the second page of the same medical record, Dr. O'Reilly describes Sizemore as suffering from "severe peripheral vascular disease with 5 cm intrarenal abdominal aortic aneurysm . . . ." [Tr. 301 (emphasis added).] Further, the Social Security Administration's Listing of Impairments defines peripheral vascular disease to include peripheral arterial disease. *See* 20 C.F.R. Part 404, Subpt. P, App. 1 § 4.00G.

regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). "In other words, a claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). For a claimant to meet one of the listings, he "must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).

In Sizemore's case, the ALJ found at step two that Sizemore suffers from the severe impairments of aortic aneurysm, back pain, history of substance abuse, a mood disorder, and borderline intellectual functioning. [Tr. 20.] The ALJ then stated at step three that Sizemore "does not have an impairment or combination of impairments that meets of medically equals the severity of one of the listed impairments . . . ." [Tr. 22.] The ALJ went on to specifically articulate why Mr. Sizemore's mental impairments do not satisfy the criteria in Listings 12.04 and 12.09. [Tr. 22-23.] The ALJ never expressly articulated, however, how Sizemore's *physical* impairments relate to the Listing of Impairments. [*See id.*]

Some courts have found that an ALJ's failure to specifically compare all of a claimant's severe impairments to the criteria set forth in the relevant listings warrants remand. *See Reynolds*, 424 F. App'x at 415-16. But other courts disagree. *See Dove-Askin v. Astrue*, No. 11-119-DLB, 2012 WL 176486, at *7 (E.D. Ky. Jan. 20, 2012) ("There is a split among circuits as to whether an ALJ's summary conclusion that a plaintiff's impairments did not meet or equal any listed impairments, without mentioning the relevant listings or explaining the decision, would alone require a remand."); *see also Rakes v. Colvin*, No. 14-321-GFVT, 2015 WL 5310783, at *4-6 (E.D. Ky. Sept. 8, 2015) (describing the Sixth Circuit's "inconsistent" approach

7

to this problem). After reviewing the applicable case law, the Court concludes that, where an ALJ mentions that the record does not support any listings but fails to articulate how or why, the best approach is to "look to the rest of the ALJ's decision" to decide if that conclusion is supported by substantial evidence. *Rakes*, 2015 WL 5310783, at *5.

Upon review of the ALJ's decision on the whole, the Court concludes the ALJ did not err by failing to specifically articulate whether Sizemore's conditions satisfied Listings 4.10 and 4.12. For a claimant to prove that he meets the medical threshold for Listing 4.10, he must not only prove that he has an aneurysm, but also that the aneurysm, or his PAD, had "dissection not controlled by prescribed treatment." *See* 20 C.F.R. Part 404, Subpt. P, App. 1 § 4.10. An aneurysm is dissecting "when the inner lining of the artery begins to separate from the arterial wall." *See id*. at § 4.00H. Sizemore, who bears the burden of proof, has failed to identify or point out any medical findings that suggest he had a case of aneurysm dissection. *See King v. Sec'y of Health & Human Servs*., 742 F.2d 968, 974 (6th Cir. 1986); *McClellan v. Astrue*, 804 F. Supp. 2d 678, 688 (E.D. Tenn. 2011) ("The claimant bears the burden of proving every element of the listing.").

Similarly, Sizemore has not identified any evidence or medical findings to suggest he meets the threshold for Listing 4.12 for peripheral arterial disease, which states that a claimant must prove "intermittent claudication" as defined by section 4.00G1 and one of the following:

(A) Resting ankle/brachial systolic blood pressure ratio of less than 0.50;

OR

(B) Decrease in systolic blood pressure at the ankle on exercise of 50 percent or more of exercise level and requiring 10 minutes or more to return to pre-exercise level;

OR

(C) Resting toe systolic pressure of less than 30 mm Hg;

OR

(D) Resting toe/brachial systolic blood pressure ratio of less than 0.40.

*See* 20 C.F.R. Part 404, Subpt. P, App. 1 § 4.12 (internal citations omitted). Sizemore never mentions intermittent claudication in his briefings, nor does he explain which of the four other requirements is satisfied in his situation. Again, although Sizemore bears the burden of proving his medical condition satisfies a particular listing, he has failed to identify medical findings that suggest his peripheral arterial disease actually meets the elements of Listing 4.12. *See King*, 742 F.2d at 974; *McClellan*, 804 F. Supp. 2d at 688.

On the whole, instead of arguing that he meets the threshold required to satisfy Listings 4.10 or 4.12, Sizemore simply takes issue with the ALJ's failure to explicitly articulate whether or not he meets those listings. The Social Security regulations do not require an ALJ to address every single listing; rather, an ALJ "need not discuss listings that the applicant clearly does not meet." *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013). Where Sizemore has not explained how or why his aneurysm and PAD satisfy the relevant Listings, the Court will not disturb the ALJ's decision on review.

C

The third and final argument Sizemore makes concerns the ALJ's articulation of the residual functional capacity. Specifically, Sizemore contends the ALJ neither considered the impact that his PAD or aneurysms had on his RFC, nor considered the "combined impact" that Sizemore's impairments taken in the aggregate have on his RFC. As for the first contention, the record is clear that the ALJ acknowledged Sizemore was being treated for both PAD and various aneurysms and that neither impairment was causing serious functional limitations beyond an

9

occasional dizzy spell. [*See* R.9 at 7; Tr. 24.] And the ALJ imposed certain environmental limitations to account for the claimant's occasional dizziness. [*See* Tr. 23.]

As for Sizemore's second contention that the ALJ did not consider the "combined impact" of Sizemore's impairments on his RFC, remand is again unnecessary. The ALJ discussed each of Sizemore's impairments in turn, but this does not mean that the ALJ failed to consider the totality of the impairments combined. According to *Gooch v. Secretary of Health & Human Services*, "the fact that each element of the record was discussed individually hardly suggests that the totality of the record was not considered." 833 F.2d 589, 592 (6th Cir. 1987). Further, the record states that the ALJ considered Sizemore's impairments both standing alone and in combination with each other. [*See, e.g.*, Tr. 22 (noting the ALJ considered the claimant's mental impairments "singly and in combination"); Tr. 23 (noting the ALJ considered "the entire record" as well as "all" symptoms).]

In the end, the Court finds the ALJ's opinion was supported by substantial evidence. While a different ALJ may have explained his decision-making process more thoroughly, or found Sizemore's PAD to be more severe, or reached any number of alternate conclusions, the instant ALJ opinion still stands. The substantial evidence standard of review is deferential as it "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen*, 800 F.2d at 545. Accordingly, if the ALJ's decision is supported by substantial evidence, it must be affirmed even if the Court would decide the matter differently and even if substantial evidence also supports the opposite conclusion. *Her*, 203 F.3d at 389-90. Sizemore simply has not convinced the Court that the ALJ's decision contains flaws warranting remand, and summary judgment in favor of the Commissioner will, therefore, be granted.

**III**

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Plaintiff Kenneth Ray Sizemore Motion for Summary Judgment [R. 21] is **DENIED**, but the Commissioner's Motion for Summary Judgment [R. 22] is **GRANTED**. Judgment in favor of the Commissioner will be entered promptly.

This the 8th day of August, 2017.

Gregory F. Van Tatenhove
United States District Judge